IN THE MATTER OF THE PETITION OF SUSAN O. ROBERTS AND OTHERS, EXECUTORS, ETC., TO VACATE AN ASSESSMENT.

*New York city — power of the common council to regulate and grade streets — what is not a repavement.*

Subdivision 10 of section 17 of chapter 335 of 1873, authorizing the common council of the city of New York to provide for and regulate streets, pavements, crosswalks, curb-stones, gutter-stones, sidewalks and the grade of streets, repealed so much of section 7 of chapter 872 of 1872, and section 5 of chapter 697 of 1867, as conferred upon the Department of Public Works the exclusive power of determining and establishing the grades of streets and avenues, and from and after the passage of the said act, it was the duty of the common council to provide for and regulate the grade of the streets, and of the Department of Public Works to comply with such directions as the common council might deem it prudent and proper to give.

Where, after a street has been regulated, graded, curbed, guttered and flagged, the grade thereof is lawfully changed, thereby necessitating the replacing of the flagging, and the curb and gutter-stones, such replacement of the said stones is not a repavement within the meaning of that term as used in chapter 335 of 1873, and chapter 476 of 1875, requiring the expenses of the improvement to be imposed upon the city generally. (BRADY, J., dissenting.)

APPEAL from an order made at Special Term denying an application to vacate an assessment.

*James A. Deering,* for the petitioners appellant.

*J. A. Beall,* for the Mayor, etc., of New York.

DANIELS, J. :

. The portion of Eighty-first street to which this controversy relates, was regulated, graded, curbed, guttered and flagged in the year 1871, under the authority of an ordinance of the common council, adopted in October, 1869. An assessment for the expenses of the work was afterwards made and confirmed, and that portion of it which was assessed upon the petitioners' lots fronting on the street was paid. A majority of the persons owning the property fronting on the street between Ninth and Tenth avenues became dissatisfied with the grade at which this portion of the street had been fixed, and they presented a petition to the common council in the early part of 1874, requesting that the grade of that part of the street should be altered so as to conform to a diagram for that purpose accompanying the petition. Action was had upon this petition by the common council in the spring of 1874. It proceeded upon the ascertained circumstance that a large majority of the owners of property favored the change in the grade, and for that reason a resolution was adopted by the concurrence of three-fourths of all the members of the common council, directing the proposed change in the grade to be made. Under that authority the change was made by the department of public works, and the expenses attending it were assessed upon the property deemed to be benefited by the improvement. What was done in the way of setting the curb and gutter-stones and laying the flagging seems to have been required for the purpose of conforming them to the change made in the grade. No unnecessary or improper work appears to have been performed in carrying out the authority of the resolution, neither was the proceeding irregular by which the assessment itself was made and distributed upon the property. From the statement made in the petition and the action taken upon it, it is to be presumed that such a majority of the property owners upon the street concurred in requesting the change to be made, as was required by the provisions of the statute prescribing what should be necessary to render such action effectual, and no proof was taken upon the hear-

ing in any manner impeaching the propriety of this presumption. This street is situated in that part of the city of New York as was included within chapter 697 of the Laws of 1867. By that act the board of commissioners of the Central Park was given exclusive power to determine and establish the grade of this and the other streets, avenues, roads and public places including the portion of the street in which this improvement was made. And it was provided, after such grade should be designated, that it should not be changed, unless the owners of two-thirds of the land in lineal feet fronting upon the street where the proposed change was to be made should consent to it in writing, and file such consent in the office of the commissioners of the Central Park. And upon that consent being filed, authority was given to such commissioners to make the proposed change in the grade of the street to which the application and consent might relate. (Laws 1867, chap. 697, vol. 2, p. 1751, § 5.)

By chapter 872 of the Laws of 1872, so much of the authority, powers and functions of the department of public parks as related to streets, avenues and roads above Fifty-ninth street not embraced within the limits of any park or public place, and including the boulevard, were taken from that department and vested in the department of public works. (Laws 1872, vol. 2, p. 2134, § 7.)

This was apparently done to render the policy of chapter 137, Laws of 1870, more uniform, complete and effectual, as that had already provided that the department of public works should have cognizance and control of opening, altering, regulating, grading, flagging, curbing, guttering and lighting streets, roads, places and avenues. (Laws 1870, vol. 1, p. 385, § 78, sub. 3.)

And, if the petition in this case had been presented for the change of grade in this portion of the street while these laws remained in force, it would necessarily have gone to the department of public works, in order to render the proceeding legal in its character. The evidence taken upon the hearing shows that it was not presented, neither was any other petition or consent for the change of the grade presented to or filed with the department of public works. It was, on the contrary, directed to and acted upon only by the common council, as that body was organized in the year 1874. But before that time further changes were made in the charter of the city of New York by the enactment of chapter 335 of the Laws of

1873. That continued the authority of the department of public works over the opening, altering, regulating, grading, flagging, curbing, guttering and lighting streets, as it had been prescribed by chapter 137 of the Laws of 1870, and it at the same time enlarged the powers of the common council over the same class of subjects. For power was then given to that body to provide for and regulate street pavements, cross-walks, curb-stones, gutter-stones, sidewalks and the grade of streets. (Laws 1873, chap. 335, p. 488, § 17, sub. 10.)

This provision was enacted in terms so general in their nature, as to include the streets in the portion of the city in which Eighty-first street was situated, as well as those not placed at any time under the control of either the department of parks or the department of public works; and to that extent it was inconsistent with so much of chapter 697 of the Laws of 1867 and chapter 872 of the Laws of 1872 as secured exclusive authority over changes in the grade of the streets to which they related, first to the commissioners of the Central Park and afterwards to the board of public works. These acts were not in terms repealed, but it was provided generally by section 119 of chapter 335 of the Laws of 1873 that all acts or parts of acts inconsistent with the act of 1873 should be repealed; and so much of these preceding laws as provided for the exercise of exclusive authority over the grade of this and other streets by the commissioners of the Central Park, and afterwards by the board of public works, was plainly inconsistent and in conflict with the general authority vested in the common council by the act of 1873. For the common council could not provide for and regulate the grade of streets if exclusive authority over that subject should still continue to exist in either one of these different boards. The language in which the authority of the common council was provided is so general in its terms as to admit of no exception, and by means of this portion of the act the common council from the time of its enactment possessed the authority to provide for and regulate the grade of this street, and the power still remaining in the department of public works was simply that of complying with the direction which the common council might deem it prudent and proper to give. The power to direct what should be done was vested in the common council, while the power to perform it still remained in the department of public works. (Laws 1873, p, 502,

sub. 3, § 71.) And such appears to have been, from the time of the enactment of this chapter of the Laws of 1873, the understanding and practice of the different departments of the government of the city. When the petition for the change in the grade of the street was presented, as that was done after the act of 1873 went into effect, it was directed and delivered as the law required it to be for that purpose, to the common council of the city, and that body acted strictly in accordance with its authority in requiring the change in the grade to be made and directing the work for that purpose to be performed under the authority of the commissioners of public works.

Replacing the flagging and the curb and gutter-stone, as that was rendered necessary by the change made in the grade of the street, was not a repavement of it in such a sense as to require the expense of the improvement to be imposed generally upon the property of the city, for the street itself had not been paved as that term has been made use of in the act of 1873 or in chapter 476 of the Laws of 1875. As that term has been employed in these acts it was made to refer to the pavement of the street itself and not to the mere fact that it may have previously been curbed and guttered and flagging laid upon the walks. The language of neither of these acts concerning this subject includes any pavement beyond that of a street, avenue or public place of the city, and from the manner in which it has been employed it was evidently intended to relate only to the bed or traveled part of such streets, avenues or public places. (Laws 1873, chap. 757, p. 1126, § 22; Laws 1875, chap. 476, p. 541, § 1.)

This intention is still further evinced by the distinguishing circumstance that, in the act of 1873, special prominence is given to cross-walks, curb-stones, gutter-stones and sidewalks, as differing from the pavement of the street itself. (Laws 1873, p. 488, sub. 10, § 17; p. 502, subs. 3 and 9 of § 71.)

And the preservation of that distinction may well be assumed to have been within the intention of the legislature when, by section 22 of chapter 757, it provided for the amendment of section 115 of chapter 335 of the Laws of 1873. And, as the same terms are made use of to designate the subject-matter to which chapter 476 of the Laws of 1875 should relate, the further presumption arises that its

enactment was animated by the same intention. The decision made by the Court of Appeals, and not yet reported, *In the Matter of Brady*, confirms the propriety of this construction of the statutes, and it is so far a direct authority in favor of the validity of this assessment.

The work for the expenses of which it was laid was let by contract to the lowest bidder, and in that particular, also, it conformed to what the laws required should be done. Throughout the proceeding, the statutory enactments relating to and regulating it were substantially complied with. So much of the assessment as is now made the subject of complaint was legally imposed, and the order made must therefore be affirmed.

DAVIS, P. J., concurred.

BRADY, J.:

I dissent for the reason that there was a repavement under the decision of the Court of Appeals.

Order affirmed.